NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CADET WIGGINS, *et al.*,<br><br>　　　　　Defendant. | Criminal Action No. 21-630 (CCC)<br><br>**OPINION & ORDER** |

**CECCHI**, District Judge.

　　This matter comes before the Court to address whether Defendant Wiggins Cadet ("Mr. Cadet") should continue to represent himself in this case. The events leading up to this decision began with a November 16, 2023, request from Mr. Cadet to proceed *pro se* in this case and forgo representation by his counsel. ECF No. 159. On November 29, 2023 (the "November 29 Hearing"), the Court held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), to assess the knowing, voluntary, and intelligent nature of Mr. Cadet's decision to represent himself. ECF No. 160. During that hearing, Mr. Cadet was responsive to the Court's questions and articulated his desire for self-representation, a request the Court granted. Following that initial *Faretta* hearing, Mr. Cadet's ability and willingness to participate in these proceedings has significantly declined. Mr. Cadet's change in behavior resulted in several days of subsequent hearings, in which the Court, among other things, held an evidentiary identity hearing on December 6, 2023 (the "December 6 Hearing"), and a second *Faretta* hearing on December 7, 2023 (the "December 7 Hearing"). The Court also held an additional hearing on December 11, 2023 (the "December 11 Hearing"), in order to further inquire about Mr. Cadet's desire to proceed *pro se* in this case.

1

Mr. Cadet stonewalled these pretrial proceedings by repeatedly asserting frivolous arguments and refusing to abide by the Court's instructions. Among other things, Mr. Cadet refused to acknowledge that he was the defendant, Wiggins Cadet, arguing instead that he was a "surety" or "subrogee" for the "principal defendant." When asked where the "principal defendant" was located, he stated that Wiggins Cadet only existed on paper, specifically on the docket and the charging instrument. As a result, the Court conducted an identity hearing, requiring the Government to call a witness and submit evidence, to establish that Mr. Cadet was, in fact, the named defendant, Wiggins Cadet—even though he admitted to being the defendant a week earlier at the first *Faretta* hearing. After the Court denied Mr. Cadet's "surety" argument as substantively meritless and explicitly directed that he move on from the subject, Mr. Cadet continued to raise the issue in response to nearly every question posed by the Court.

As a result of Mr. Cadet's disruptive and uncooperative behavior, the Government requested that the Court hold a second *Faretta* colloquy, which was conducted at the December 7 Hearing, to determine whether Mr. Cadet's waiver of his right to counsel remained a voluntary, knowing, and intelligent decision. During that colloquy, Mr. Cadet refused to meaningfully answer the Court's questions by either remaining silent or restating his position that he was merely a "surety" or "subrogee" for the defendant. At the Government's request, the Court also engaged in yet another colloquy with Mr. Cadet at the December 11 Hearing, to give him one more opportunity to unequivocally express his desire to proceed *pro se*. However, as he did during the second *Faretta* hearing, Mr. Cadet again refused to substantively answer the Court's questions, instead remaining nonresponsive, maintaining that he was "not the defendant," and repeatedly directing the Court to his submissions.[1]

---

[1] Namely, Mr. Cadet sought a stay of trial pending resolution of what he construes to be an appeal to the Third Circuit Court of Appeals. *See* ECF No. 175; Dec. 11 Hearing Transcript ("Dec. 11 Tr.") at 8:9–13.

For the reasons set forth below, and in consideration of the events taking place since Mr. Cadet began representing himself, the Court will revoke Mr. Cadet's *pro se* status and reappoint John McMahon, Esq. as full-time counsel.[2]

## I.     BACKGROUND

This case arises out of a superseding indictment returned by a grand jury on August 2, 2022, charging Mr. Cadet and his co-defendant, Zyquan McCray with (1) Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) and Section 2; (2) conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); (3) brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and Section 2; and (4) conspiracy to brandish a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(o). ECF No. 152 at 2; *see also* ECF No. 84. Mr. Cadet was also charged with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g). *See* ECF No. 84.

As discussed above, upon being informed that Mr. Cadet sought to represent himself at trial, the Court held a status conference and engaged in a *Faretta* colloquy at the November 29 Hearing.[3] *See* ECF No. 160; Nov. 29 Hearing Transcript ("Nov. 29 Tr."). After conducting the *Faretta* colloquy with Mr. Cadet, during which he identified himself as Wiggins Cadet and provided coherent, responsive answers to the Court's questions, the Court determined that Mr.

---

In a separate order, ECF No. 190, this Court denied Mr. Cadet's request and found that a stay of trial was not appropriate.

[2] Also pertinent to the Court's decision regarding Mr. Cadet's waiver of counsel and revocation of the right to self-representation are the Government's submissions regarding these issues (ECF Nos. 156, 171, 173) and Mr. Cadet's December 4 and 5, 2023, submissions (ECF Nos. 165-66). The Court has reviewed and considered these filings in reaching its conclusion.

[3] On November 16, 2023, the Court received a letter from John McMahon, Esq., Mr. Cadet's court-appointed attorney at that time, stating: "My client has advised me that he wishes to represent himself" in this case moving forward. ECF No. 159. Mr. McMahon's submission included a letter from Mr. Cadet, addressed to Mr. McMahon, stating: "Please let this letter confirm that I informed you orally that I wish to exercise my constitutional right to represent myself." ECF No. 159-1.

Cadet had knowingly and voluntarily waived his Sixth Amendment right to counsel and granted him *pro se* status. *See* ECF No. 160; Nov. 29 Tr. The Court also appointed Mr. McMahon as standby counsel. *See* ECF No. 160; Nov. 29 Tr.

The parties reconvened before the Court at the December 6 Hearing to address all remaining issues, such that jury selection could begin the following day as scheduled. It became immediately evident during the December 6 Hearing that Mr. Cadet's behavior—characterized by his newly disruptive, nonresponsive, and delay-inducing conduct—had changed since the *Faretta* colloquy. From the outset of the December 6 Hearing, Mr. Cadet refused to meaningfully participate or provide responsive answers to the Court's questions. Indeed, when asked for his appearance to open the hearing, Mr. Cadet responded, "My name is Wiggins. I am the surety on behalf of the principal, which is the defendant on the docket sheet, on the instrument docket sheet." Dec. 6 Hearing Transcript ("Dec. 6 Tr.") at 4:19–21. Asked to explain further, Mr. Cadet responded:

> Well, in relation to the subject matter, I have an interest in it, which means I sent the notice to the court – the clerk of court and also to the prosecutor. I am the surety in this matter – in relation to this matter on behalf of the principal debtor which is the defendant. I tendered a special deposit to the clerk of court, which makes me the subrogee –  and the clerk of courts in this court and also the prosecutor, the subrogors, and makes me substituted to the rights and claim and interest related – It makes me related – the first person – I'm primary rights. I'm just enforcing my primary rights, which makes me the primary right of the subrogors.

*Id.* at 4:25–5:14.

Throughout the hearing, Mr. Cadet continuously refused to acknowledge his identity as the defendant, despite having done so during previous proceedings. Instead, he obstructed the proceedings, regularly interrupting the Court with, as the Government explains, "non-responsive monologue[s]" (ECF No. 171 at 1)—namely that he was merely a "surety" or "subrogee" to Wiggins Cadet and, having "tendered a special deposit," was appearing solely to "settle and close

4

this matter." *See, e.g.*, Dec. 6 Tr. at 34:4–23, 44:13–19.  He repeated that he, "standing as the surety[,] will be exonerated" if there is a "refus[al] of tender of the special deposit."  *Id.* at 41:9–15.  Mr. Cadet's disruptive and deleterious conduct appeared to arise out of his December 4 and December 5 submissions to the Court, each titled a "Notice of Subrogation and Substitution."  ECF Nos. 165, 166.  The submissions primarily consisted of handwritten commentary about his role as a "surety" seeking a "pretrial settlement of this court transaction" (ECF No. 166 at 15), along with a notarized "I.S.L.A.M. Moorish Americans – Northwest Amexem Judicial Notice and Proclamation" in which Mr. Cadet identifies himself as a Moorish American, pledges allegiance to the Moorish Nation, and proclaims various associated rights and beliefs.[4]  *Id.* at 29–36.

In light of Mr. Cadet's continued insistence during the December 6 Hearing that he was a different person or entity, it became necessary for the Court to hold an identity hearing in which it received evidence and heard testimony from Special Agent Dallas Herrmann ("Special Agent Herrmann") of the Bureau of Alcohol, Tobacco, Firearms and Explosives, who was involved in the investigation of this case.  *See* Dec. 6 Tr. at 15:11–26:1, 33:11–40:14.  Special Agent Herrmann testified about his familiarity with Mr. Cadet and various exhibits put forth by the Government, including Mr. Cadet's arrest report and arrest photograph.  *Id.* at 17:2–19:24, 23:9–17.  Special Agent Herrmann further testified that in September 2023, he visited the law office of John McMahon, Esq., counsel for Mr. Cadet at the time.  *Id.* at 23:19–24:9.  Special Agent Herrmann explained that he took a buccal swab from the individual he knew to be Wiggins Cadet.  *Id.* at

---

[4] "[T]he Moorish movement asserts roots in the adherents' ancestors allegedly being the Moors of Africa and the Iberian Peninsula . . . .  In recent years, the Moorish movement has become intertwined with the idea of sovereign citizenship, as adherents describ[e] themselves as sovereign citizens by virtue of their alleged Moorish origin.  As a result, some members of the Moorish movement teach that American federal and state courts have no jurisdiction over the adherents of the movement."  *Bey v. Bray*, No. 4:22-CV-933, 2023 WL 5987393, at *5–6 (E.D. Tex. Aug. 1, 2023), *report and recommendation adopted,* No. 4:22-CV-933, 2023 WL 6162742 (E.D. Tex. Sept. 21, 2023) (internal quotations and citations omitted).

5

24:24–25:1. Special Agent Herrmann concluded that the individual in the arrest photo, the individual appearing in the courtroom, and "Wiggins Cadet," as named on the superseding indictment, were each the same individual from whom he took the buccal swab. *Id.* at 24:10–23, 25:2–26:1, 36:12–23, 38:25–39:15.

Throughout Mr. Herrmann's testimony, whenever the Court inquired as to whether Mr. Cadet had any objections to the evidence being admitted, he again repeated his speech. For example, he stated: "Once again, Your Honor, this is for the record and on the record. I, as Wiggins, the surety for the principal debtor and defendant, did tender a special deposit to the trustee clerk of court and for pretrial settlement of this court transaction." *Id.* at 21:7–15. The Court likewise repeatedly asked whether he wished to cross-examine Special Agent Herrmann. Each time the Court was met with a non-responsive monologue denying his identity and restating he was here to "settle and close this matter." *Id.* at 21–23, 26–28. A representative example of the obstructive behavior during Special Agent Herrmann's testimony follows:

> MR. LEVIN: -- first. For the record, I just showed Mr. Cadet a copy of the superseding indictment on his case as well as to Mr. Roe [co-defendant's counsel].
>
> THE COURT: I'm actually going to ask him. Sir, do you need a printed copy, or is it fine to look at it on the screen there?
>
> DEFENDANT CADET: Are you speaking to me, ma'am?
>
> THE COURT: Yes.
>
> DEFENDANT CADET: Well, the prosecutor referred to me as Wiggins Cadet and he didn't take my notice of subrogation. So as far as him referring to me as Wiggins Cadet, the principal, that is incorrect. I'm the surety on behalf of him.
>
> THE COURT: Sir, the question is would you like to see a paper copy of the indictment?
>
> DEFENDANT CADET: Ma'am --

> THE COURT: That's it. Simple question. Would you like to see a paper copy or an electronic copy? I have a paper copy. I'm prepared to hand it up to you. So here we go. Take a look at this.
>
> DEFENDANT CADET: Ma'am, I object to that. I'm just here to settle and close the matter as a surety.
>
> THE COURT: Okay. I'm going to show you it anyway.
>
> DEFENDANT CADET: But I object to it, Your Honor. Like I said, I'm just here on behalf of the principal debtor --
>
> THE COURT: All right. We have handed --
>
> (Simultaneous crosstalk.)
>
> DEFENDANT CADET: I'm just here to settle and close the matter.
>
> THE COURT: Okay, sir. I'm speaking. We are handing the indictment up to the individual, Wiggins Cadet, to take a look at. And I recognize he's challenging the entity, his identity.
>
> DEFENDANT CADET: I'm not challenging that, Miss. I'm just simply notifying on the record my relation to the principal -- to the defendant. And I said I'm here as the surety. That's my relationship to the defendant as the surety. I stand as the subrogee because I gave notice of the special deposits for subrogation. So I stand now as the subrogee. And I'm enforcing those rights, which is my constitutional rights, and it's being violated. And if you refuse -- if this Court refused to tender a special deposit, then I'm exonerated as a surety once again, ma'am.
>
> THE COURT: Let's show it to defense counsel, please. Any issues, sir?
>
> MR. ROE: No.
>
> THE COURT: Thank you.

*Id.* at 33:21–35:17.

The Court reserved judgment and the parties and counsel reconvened before the Court at the December 7 Hearing with the intention of fully resolving outstanding issues in order to proceed to trial. *See* ECF No. 172. Mr. Cadet's obstructive behavior nevertheless persisted. When asked for his appearance, Mr. Cadet again refused to acknowledge he was the defendant, instead insisting he was "specially visiting the Court today on behalf of the principal, the defendant Wiggins Cadet."

7

Dec. 7 Hearing Transcript ("Dec. 7 Tr.") at 3:15–16.  Further, when the Court attempted to rule on the issues of Mr. Cadet's identity and his supposed "surety" status, Mr. Cadet resisted:

> THE COURT: Let me turn to defendant Cadet.  Sir, any issue with that?
>
> DEFENDANT CADET: Your Honor, I'm just specially here as the surety specially appearing today. As in, from yesterday, the Court indicated that the prosecutor would submit a notice.  And from my understanding, the only obvious question is to resolve this matter, settle this matter.  But I'm assuming that he's refusing the special deposit; and if he is refusing the special deposit, me standing as the subrogee, I'm entitled to enforce my rights and to claim an interest.  And so I'll, therefore, be exonerated if he refuses my special deposit of notice of subrogation.
>
> THE COURT: Thank you, sir.  Thank you.  We are going to address that.  But in any event, do you have any issue with the procedure of going through the motions first that I just discussed and then going into a *Faretta* hearing?
>
> DEFENDANT CADET:  Your Honor, Your Honor --
>
> THE COURT:  Yes.
>
> DEFENDANT CADET:  -- that is -- my issue is the sub to here to settle and close this matter on behalf of the principal, and that is my only issue.  And that has to be addressed here before anything because that's the only issue that need to be addressed.  And the prosecutor is deliberately violating my rights and not recognizing my rights and recognizing the constitutional principles that involves my rights.

*Id.* at 5:12–6:14.

Despite Mr. Cadet's efforts, the Court ruled on the identity and surety issue.  Based on Special Agent Herrmann's testimony and the respective evidence discussed above, the Court found that "the government ha[d] sufficiently shown probable cause that the defendant appearing in this [court]room [wa]s, in fact, the individual charged in the superseding indictment, Wiggins Cadet." *Id.* at 10:9–14.  The Court then turned to Mr. Cadet's "surety" commentary at the December 6 Hearing and his related submissions.  The Court explained:

> With respect to a purported substitution or subrogation, Mr. Cadet repeatedly contended at yesterday's hearing that he was Wiggins, no last name, the surety, appearing on behalf of the principal defendant, Wiggins Cadet, as listed on the charging instrument.

> Mr. Cadet noted in his role as surety, he was specially appearing with the sole intention of settling and closing this case.
>
> Mr. Cadet did not, however, articulate any basis for doing so, under the United States Constitution, any federal statute, case law, the Federal Rules of Criminal Procedure, or any other binding legal authority.

*Id.* at 11:6–17. On the record, the Court identified extensive case law rejecting Mr. Cadet's Moorish American-related arguments, including that he was a "surety" intending to "settle and close" the case based on a "special deposit," as "indisputably meritless" and "patently frivolous." *Id.* at 11:18–15:22. Accordingly, the Court found that "any such relief sought by Mr. Cadet" in his December 4 and 5 submissions and his commentary during the December 6 Hearing had "no basis in law." *Id.* at 15:23–16:2. The Court emphasized that "Mr. Cadet may no longer make any arguments regarding being a person or entity other than the defendant Wiggins Cadet, being a surety on behalf of a principal, his notice of substitution or subrogation, that a special deposit allows him to settle and close this case, or anything of a related nature." *Id.* at 16:2–9. The Court likewise reminded Mr. Cadet that "to the extent he continues to represent himself pro se, any filings must be in compliance with this Court's orders, the Federal Rules of Criminal Procedure, and the District of New Jersey's local rules." *Id.* at 16:10–13.

Nevertheless, Mr. Cadet refused to adhere to the Court's rulings and continued to espouse identical commentary from the previous day, preventing the Court from resolving the remaining open pretrial matters in a timely fashion. Indeed, immediately following the Court's ruling outlined above, Mr. Cadet stated:

> This is for the record and on the record. Equity enforces what good reason and good conscious require. Equity will not suffer a wrong without a remedy. Equity looks to intent rather than form. Equity delights to do complete justice and not by halves. Equity aids the vigilant and not those who sleep upon their rights.
>
> So with that being said, Your Honor, I, as the surety under the legal composure, to do so hereby having made all the payments for and on behalf of the principal debtor

9

>since the beginning do notice all parties that I am subrogated to the rights of the creditors, which is the prosecutors in this and all transaction.

*Id.* at 16:21–17:7.

Based on these unusual circumstances, Mr. Cadet's sudden persistent disregard for the Court's questioning, his interference with the Court's ability to complete pretrial proceedings before trial, and the Government's request (*see* ECF No. 171; Dec. 7 Tr. at 4:21–24), the Court held a second *Faretta* colloquy, more fully discussed below, to reassess the voluntary, knowing, and intelligent nature of Mr. Cadet's waiver of his Sixth Amendment right to counsel and whether his *pro se* status remained appropriate. *See* Dec. 7 Tr. at 20:18. Also upon the Government's request (ECF No. 173 at 4), the Court engaged in an additional colloquy with Mr. Cadet at the December 11 Hearing to further inquire about his *pro se* status. Dec. 11 Tr. at 3:25–4:10. The Court reserved judgment on the issue at the December 7 and 11 Hearings.

## II.     LEGAL STANDARD

The Sixth Amendment grants defendants the right to self-representation in criminal proceedings. *See Faretta v. California*, 422 U.S. 806, 814 (1975); *United States v. Peppers*, 302 F.3d 120, 130 (3d Cir. 2002). Because there is tension between the protected rights to counsel and self-representation, the Court assumes "the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *Peppers*, 302 F.3d at 130; *see also Buhl v. Cooksey*, 233 F.3d 783, 790 (3d Cir. 2000) ("The trial judge must 'make a thorough inquiry and . . . take all steps necessary to insure the fullest protection of this constitutional right.'" (internal citation omitted)). "Courts must indulge every reasonable presumption against a waiver of counsel." *Buhl*, 233 F.3d at 790. Overcoming this presumption requires that "a defendant [ ] clearly and unequivocally ask

to proceed *pro se*." *Id.* When "a proper request is made and counsel is waived," a defendant must be permitted to proceed *pro se*. *Id.* at 791.

However, "the right of self-representation is not absolute." *United States v. Torres*, Crim. No. 20-00418, 2023 WL 3318567, at *3 (D.N.J. May 9, 2023) (quoting *Indiana v. Edwards*, 554 U.S. 164, 171 (2008)). A defendant may represent himself "only to the extent that he is 'able and willing to abide by rules of procedure and courtroom protocol.'" *United States v. Schwartz*, 315 F. App'x 412, 416 (3d Cir. 2009). Self-representation may be terminated when the defendant "deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970)); *Thomas v. Carroll*, 581 F.3d 118, 125 (3d Cir. 2009). "[W]hen a defendant's obstreperous behavior is so disruptive that the trial cannot move forward, it is within the trial judge's discretion to require the defendant to be represented by counsel." *United States v. Brock*, 159 F.3d 1077, 1079 (7th Cir. 1998). In such circumstances, existing standby counsel may be ordered to represent the defendant. *Faretta*, 422 U.S. at 834 n.46 (citation omitted); *see Brock*, 159 F.3d at 1080.

### III. DISCUSSION

#### a. The Second *Faretta* Hearing

The Third Circuit recognizes that, "[a]bsent an express revocation of the criminal defendant's waiver or some other change in circumstances, a district court has no standing obligation to revisit the waiver question and conduct another *Faretta* colloquy at a later stage in criminal proceedings." *United States v. Norwood*, 566 F. App'x 123, 126 (3d Cir. 2014). However, "a renewed *Faretta* inquiry is necessary" where "circumstances have sufficiently changed since the date of the [initial] *Faretta* inquiry [such] that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel." *United States v. Vas*,

11

255 F. Supp. 3d 598, 602 (E.D. Pa. 2017); *United States v. Moreland*, 622 F.3d 1147, 1155 (9th Cir. 2010) ("The district court conducted two separate *Faretta* hearings in this case.").

The Government's request (ECF No. 171 at 2–3), and the Court's decision, to hold a second *Faretta* hearing was motivated by Mr. Cadet's complete unwillingness to participate or cooperate during the December 6 and December 7 Hearings. For instance, during the December 6 Hearing, Mr. Cadet interrupted and objected, without a valid basis for doing so, to opposing counsel's arguments on several occasions. Dec. 6 Tr. at 7:25–8:14. During those proceedings, Mr. Cadet also refused to participate in the questioning of witnesses, review evidence, or acknowledge the Court's questions regarding his intentions to participate. *See, e.g.*, *id.* at 20:22–23:3, 26:8–28:13. In lieu of cooperation or even basic responsiveness, Mr. Cadet continuously reiterated the position presented in his submissions—that he believes he is some person or entity other than the defendant, Wiggins Cadet. Specifically, Mr. Cadet considered his impending trial "not really an issue" and reiterated that he was merely present to "settle and close the matter." *Id.* at 68:2–11. Based on this conduct, the Court asked whether Mr. Cadet believed he could cooperate with the Court and opposing counsel at trial if the Court were to deny his submissions. Mr. Cadet was again nonresponsive, suggesting he would be unable to meaningfully participate at trial. *Id.* at 69:22–70:14.

Mr. Cadet's disruption persisted at the December 7 Hearing. For example, the Court issued rulings on the record that (i) the individual in the courtroom was, in fact, the defendant, Wiggins Cadet; and (ii) denied as meritless Mr. Cadet's subrogation and substitution submissions, arguing that he was a "surety" on behalf of the defendant. *See* Dec. 7 Tr. at 9:12–25, 15:23–16:13. Given these rulings, the Court explicitly directed Mr. Cadet that he was no longer permitted to discuss those issues during the proceedings. Mr. Cadet refused to comply with the Court's ruling,

continuously responding to any inquiry with the same contention that he was a "surety" or "subrogee" on behalf of the defendant. One such exchange, of which there were many, is as follows:

> THE COURT: All right. Thank you. I believe I've gone over all of those issues, and, sir, I've decided those issues. So you are now going to adhere to the Court's order and ruling.
>
> DEFENDANT CADET: Your Honor, I'm simply here stating for the record and on the record that I'm the only real party in interest here, and this Court cannot just violate my rights and continue to not recognize my rights and refuse to actually act oblivious to what's going on because I'm the only real party in interest here. The prosecutor ha[s] a fiduciary obligation to settle and close the matter as I stand . . . as the subrogee.
>
> THE COURT: – I understand that you are making that argument again –
>
> DEFENDANT CADET: No, this is not an argument, ma'am. This is me putting it on the record. I'm not arguing. This is not no argument or – like I said yesterday, ma'am, that I'm a friend of the Court. I'm not a belligerent enemy or none of that. I'm actually a friend of the Court, and this is not no argument –
>
> THE COURT: Let me put it this way. I understand what you are trying to say, but I have addressed all of those issues in my decision and I've indicated that they do not have any merit, whether it be factual or legal. And I have made a direction to you not to refer to those arguments further. I have made a ruling and concluded that they are meritless.
>
> DEFENDANT CADET: Your Honor, you made – you was talking to the principal defendant. I'm the subrogee. So if you're acknowledging the subrogee, then I already discharged the principal debtor. So you keep saying you made a ruling. I'm not the principal defendant; I'm the subrogee.
>
> THE COURT: Sir –
>
> DEFENDANT CADET: So when you're speaking to me, ma'am, you're not speaking to the principal defendant. You are speaking to the subrogee. If you continue to violate my rights or if this Court continue[s] to violate my rights or constitutional rights, it will just go to appeals, like I notified the Court yesterday, and I will just be exonerated as the surety.

*Id.* at 17:19–19:8.

Ultimately, the Court found this conduct—that is, Mr. Cadet's insistence on asserting that he is not the defendant, interrupting the Court and the Government, and refusing to answer questions—to be a significant divergence from his behavior during the initial November 29 Hearing, where he adhered to the Court's instructions and responded to questions appropriately. Accordingly, the Court found that circumstances had changed such that a second *Faretta* hearing was necessary to determine whether Mr. Cadet's waiver of his right to counsel remained knowing, voluntary, and intelligent. *See United States v. Julison*, 635 F. App'x 342, 343 (9th Cir. 2015) (affirming district court's revocation of the defendant's self-representation after the court "held a second *Faretta* hearing at the government's request," during which the defendant "made a lengthy, confusing statement arguing the court's exercise of jurisdiction violated his rights as a 'sovereign'").

    b. **Revocation of Right to Self-Representation**

After conducting the second *Faretta* hearing on December 7, and a subsequent colloquy on December 11, the Court finds that Mr. Cadet no longer meets the standard required to waive his Sixth Amendment right to counsel. At the December 7 Hearing, Mr. Cadet refused to be sworn in or meaningfully participate in the Court's second *Faretta* colloquy. *See* Dec. 7 Tr. at 31:16–19 ("The defendant is apparently refusing to proceed with getting sworn in. The defendant is reiterating the same statement he has made a number of times regarding his nature as a surety."). Mr. Cadet was warned that if he did not participate in the Court's questioning, the Court may find it appropriate to revoke his *pro se* status. *Id.* at 33:19–24. Nonetheless, he answered many of the Court's inquiries with either nonresponsive statements or repeated sentiments that he is appearing as a "subrogee" on behalf of the defendant. Examples of Mr. Cadet's answers are as follows:

    THE COURT: What is the highest level of education that you have received?

14

> DEFENDANT CADET: Your Honor, equity regards what good reason and good conscious require. What I'm simply here to do is notify – well, I'm specially appearing on behalf of the principal just to settle and close the matter. So anything that's outside of this issue is frivolous, Your Honor.
>
> . . .
>
> THE COURT: Do you understand that the Court can impose those [previously articulated] penalties on you for each of the five counts in the superseding indictment?
>
> DEFENDANT CADET: For the record and on the record, equity would not suffer a wrong without a remedy, Your Honor.
>
> THE COURT: Do you understand that a conviction on Count 3, brandishing a firearm during and in relation to a crime of violence, carries a mandatory minimum sentence of seven years' imprisonment?
>
> DEFENDANT CADET: As a subrogee, Your Honor, those questions are irrelevant because I am here to settle and close the matter on behalf of the principal, which are – which is the defendant.

*Id.* at 36:22–37:3, 47:25–48:12. Eventually, Mr. Cadet disengaged from the colloquy altogether and remained silent during many of the Court's questions. *See, e.g.*, *id.* at 53:3–58:15. Critically, Mr. Cadet remained silent when the Court asked whether he wished to continue representing himself:

> THE COURT: In light of the penalties that you might suffer if you are found guilty and in light of all the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by an attorney?
>
> Sir, any answer to that?
>
> Do you understand that question?
>
> Do you understand the questions that I've asked you recently that you've provided no answers to?
>
> Do you have any response to any of them?
>
> The defendant is remaining silent. The defendant has not provided a response.

*Id.* at 57:23–58:9.

15

At the Government's request (ECF No. 173 at 4), the Court asked Mr. Cadet a number of follow up questions at the December 11 Hearing to provide him one more opportunity to knowingly and voluntarily waive his right to counsel. Again, however, Mr. Cadet failed to unequivocally do so or otherwise meaningfully engage in the Court's questioning. For instance, when asked to state his name for the record, Mr. Cadet said that he was merely appearing on behalf of the principal defendant, Wiggins Cadet. *See* Dec. 11 Tr. at 6:10–13; 8:21–25. He then refused to answer the Court's questions regarding his representation, each time directing the Court to "reconsider" a request he made to stay trial even after the Court repeatedly stated that it would take his submission under advisement. *See, e.g.*, *id.* at 6:19–8:20; 14:18–21 ("Sir, I will be taking a look at your submission. In fact, I had it printed out right now. I have it before me; so I have told you I am going to take a look at that."). Again, the Court expressed to Mr. Cadet that his refusal to participate could result in the revocation of his right to self-representation. *Id.* at 13:3–6; 14:4–12. Nevertheless, when explicitly asked whether he still wished to represent himself at trial, Mr. Cadet refused to provide a substantive answer. *See id.* at 15:2–16:1 ("THE COURT: Do you still wish to represent yourself at trial? DEFENDANT CADET: Your Honor, I am specially here on behalf of the defendant. And I'm asking the Court to take notice of the appeal that was filed on behalf of the defendant . . ."). Mr. Cadet then invoked silence for the remainder of the Court's questions:

> THE COURT: Will you abide by my orders and rulings, sir?
>
> No response.
>
> Will you directly answer all questions I ask you without making speeches or raising other matters?
>
> No responses has been provided.
>
> Will you conform your conduct to the Court's instructions?

16

No response is provided.

*Id.* at 17:5–13.

"The refusal to provide answers to the colloquy is similar to a refusal to attend proceedings, and the court may treat it as a waiver of the right to self-representation." *United States v. Pryor*, 842 F.3d 441, 450 (6th Cir. 2016). Mr. Cadet's nonresponsive answers and silence in response to the Court's questioning do not represent a "clear[ ] and unequivocal[ ] [request] to proceed *pro se*" and he has therefore failed to voluntarily, knowingly, and intelligently waive his right to counsel. *Buhl*, 233 F.3d at 790; *see also United States v. Nissen*, 555 F. Supp. 3d 1174, 1206 (D.N.M. 2021) (rejecting waiver of right to counsel when defendant refused to admit he was the defendant, explaining that he "can't represent something I'm not"). And while Mr. Cadet previously expressed a desire to represent himself, his current inability to unequivocally articulate that request fails to meet the standard for waiver of his right to counsel. *See, e.g.*, *Pryor*, 842 F.3d at 450 (finding defendant's right to self-representation waived when he raised "sovereign citizen arguments and refused to engage with the magistrate judge about his desire to represent himself"); ECF No. 173 at 3 (Government noting that, "despite acknowledging that he understood the Court's questions, [Mr.] Cadet refused to say 'yes' or 'no'" to the Court's questions during the second *Faretta* colloquy).

Regardless, the Court also finds that Mr. Cadet's actions during the December 6, 7, and 11 Hearings warrant revocation of his right to self-representation. *United States v. Brunson*, 482 F. App'x 811, 818 (4th Cir. 2012) ("Numerous courts understandably have permitted district courts to revoke a defendant's *pro se* status prior to trial."); *United States v. Mabie,* 663 F.3d 322, 329 (8th Cir. 2011) (upholding the pretrial revocation of a defendant's *pro se* status). As the Government notes (ECF No. 173 at 3), the Court's decision does not constitute the "den[ial] [of]

17

a defendant's initial request to represent himself . . . where disruption is predicted but has not occurred," *Untied States v. Taylor*, 21 F.4th 94, 104 (3d Cir. 2021). After being granted *pro se* status, as described in greater detail above, Mr. Cadet was disruptive and nonresponsive to the Court's instructions such that it was difficult to proceed with other pretrial matters. *See, e.g.*, *Torres*, 2023 WL 3318567, at *5 (revoking defendant's *pro se* status where the defendant was "attempt[ing] to re-litigate decided issues" and exhibited a "continued inability to abide by the rules and procedures as necessary to proceed *pro se* in this matter"); *United States v. Noble*, 42 F.4th 346, 250–51 (3d Cir. 2022) (finding "it would have been impossible to conduct a fair trial if [defendant] continued pro se" where defendant's "silence was a conscious obstructionist tactic"). Indeed, the Court recognizes that Mr. Cadet is likely to continue his pattern of behavior during trial, making it "impossible for the district court to conduct any type of meaningful dialogue" and "for the district court to try the case." *See Brunson*, 482 F. App'x at 818 (affirming district court's revocation of *pro se* status where the Appellants "refused to acknowledge that they were the defendants named in the indictment, indicating instead that they were the 'intervenors'"); *see also United States v. Atkins*, 52 F.4th 745, 751 (8th Cir. 2022) (finding district court did not err in denying defendant's requests for self-representation where defendant's "disruptive behavior during his pretrial hearings [ ] threatened to forestall the proceedings," suggesting that he "would continue to obstruct if allowed to represent himself at trial"); ECF No. 173 at 3. In similar situations, courts have not hesitated to revoke an uncooperative defendant's *pro se* status. *See, e.g.*, *Brock*, 159 F.3d at 1080–81 (finding defendant forfeited his right to self-representation where he made it "extremely difficult for the court to move forward with its proceedings"); *United States v. Mosley*, 607 F.3d 555, 559 (8th Cir. 2010) (affirming revocation of *pro se* status because defendant "was not willing to participate" in proceedings and "refused to respond to [the Court's]

questions"); *Faretta,* 422 U.S. at 834 n.46 ("The right of self-representation is not a license to abuse the dignity of the courtroom."); *United States v. Edelmann*, 458 F.3d 791, 808–09 (8th Cir. 2006) (finding a defendant is not entitled to use the right of self-representation "as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." (internal quotation omitted)).

### IV.     CONCLUSION

For the reasons set forth above, the Court finds that Mr. Cadet has failed to knowingly, voluntarily, and intelligently waive his Sixth Amendment right to counsel, and regardless, the Court finds it appropriate to revoke Mr. Cadet's *pro se* status based on his behavior impeding proceedings in this matter and his failure to abide by the Court's instructions. For those reasons, the Court hereby appoints standby counsel John McMahon, Esq. to resume full-time representation of Mr. Cadet in this action.[5]

Accordingly, **IT IS** on this 22nd day of December 2023,

**ORDERED** that, for the reasons set forth above, Wiggins Cadet's right to self-representation is hereby revoked; and it is further

**ORDERED** that the Court hereby appoints John McMahon, Esq., to serve as Mr. Cadet's full-time counsel in this matter.

**SO ORDERED**.

_____
**CLAIRE C. CECCHI, U.S.D.J.**

---

[5] *See Torres*, 2023 WL 3318567, at *4 ("Where a defendant engages in misconduct after affording the defendant the latitude of self-representation, and the Court terminates his *pro se* status, that Court may appoint the defendant's standby counsel to represent the defendant, even over the defendant's objection." (citing *Faretta*, 422 U.S. at 384, n.46)); *Brock*, 159 F.3d at 1080.